No. 25-20360

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

TYLER HARRINGTON,

*Plaintiff - Appellant*

*v.*

JAMES LANCASTER; NATHANIEL CANO; JARED LINDSAY,

*Defendants - Appellees*

---

On Appeal from the
United States District Court for the Southern District of Texas
4:24-CV-366

---

**BRIEF OF APPELLANT TYLER HARRINGTON**

---

ALESSANDRO CLARK-ANSANI
alessandro@civilrightscorps.org
JEFFREY D. STEIN
jeff@civilrightscorps.org
CIVIL RIGHTS CORPS
1601 Connecticut Avenue, N.W. Suite 800
Washington, DC 20009
Telephone: (202) 844-4975
Counsel for Plaintiff-Appellant Tyler
Harrington

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5TH CIR. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Appellant: | Tyler Harrington |
| Appellate Counsel for Appellant: | Alessandro Clark-Ansani<br>Jeffrey Stein<br>CIVIL RIGHTS CORPS |
| Additional Trial Counsel for Appellant: | Kiah Duggins<br>CIVIL RIGHTS CORPS |
| Appellees: | James Lancaster<br>Jared Lindsay<br>Nathaniel Cano |
| Trial and Appellate Counsel for Appellee: | Gregory Burnett<br>Rachel Fraser<br>Kelsie Copeland<br>OFFICE OF THE HARRIS COUNTY ATTORNEY |

/s/Alessandro Clark-Ansani
Attorney of record for Plaintiff-Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Tyler Harrington ("Mr. Harrington") requests oral argument pursuant to Rule 28.2.3. The allegations forming the basis of this lawsuit, and at the center of the District Court's orders granting Defendant-Appellants' Motions to Dismiss, are highly fact-specific. Because there were no hearings in the District Court at which counsel might have addressed any questions or confusion, the resulting opinion misstated several key facts. Accordingly, oral discussion of the facts and applicable law would aid the Court's decisional process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS ........................................................................... iv

TABLE OF AUTHORITIES ........................................................................ 1

JURISDICTIONAL STATEMENT .................................................................. 3

STATEMENT OF THE ISSUES ..................................................................... 3

STATEMENT OF THE CASE ........................................................................ 4

    I.   Relevant Facts as Alleged in the Complaint ................................................. 4

        1.   Defendants responded to 911 calls concerning the home of Mrs. H, Mr. Harrington's neighbor.............................................................................. 4

        2.   Defendants never secured consent to search any home, let alone Mr. Harrington's, nor did exigent circumstances exist. ................................. 7

        3.   Defendants unlawfully entered and searched Mr. Harrington's home without confirming the address, without consent, and without exigent circumstances.......................................................................... 8

        4.   Defendants unlawfully held Mr. Harrington at gunpoint in his own home. ................................................................................................ 9

    II.  Procedural History..................................................................................... 10

    III. Relevant Rulings ...................................................................................... 11

SUMMARY OF THE ARGUMENT .............................................................. 13

ARGUMENT .............................................................................................. 15

    I.   Mr. Harrington Plausibly Pleaded That Defendants Violated His Clearly Established Right to Be Free from Unlawful Entry, Search, and Seizure. ..16

        1.   Mr. Harrington plausibly pleaded that Defendants entered his home without a warrant, consent, or exigent circumstances.......................... 16

        2.   Mr. Harrington plausibly pleaded that Defendants seized him without probable cause by holding him at gunpoint and telling him not to move. .................................................................................... 18

3.    The District Court erred by departing from the Complaint's allegations that (i) Defendants lacked consent—or even a reasonable perception of consent—to enter Mr. Harrington's home and that (ii) there were no exigent circumstances justifying the entry and seizure. ........................18

    i.    The District Court incorrectly relied on Defendants' assertions, rather than the Complaint's allegations, in determining that Defendants received consent to search Mr. Harrington's home...19

    ii.    The District Court incorrectly relied on Defendants' assertions, rather than the Complaint's allegations, in determining that exigent circumstances justified entering and searching Mr. Harrington's home..........................................................................................22

4.    Defendants are not entitled to qualified immunity on the unlawful entry, search, or seizure claims............................................................24

5.    Qualified immunity does not apply to claims brought pursuant to 42 U.S.C. § 1983. ...................................................................................28

II.  Mr. Harrington Plausibly Pleaded That Defendants Violated His Clearly Established Right to Be Free from Unlawful Excessive Force....................29

1.    Mr. Harrington plausibly pleaded that Defendants violated his clearly established right to be free from excessive force. ................................29

2.    Defendants' alleged excessive force violated clearly established law. 30

CONCLUSION .................................................................................................33

CERTIFICATE OF SERVICE ............................................................................34

CERTIFICATE OF COMPLIANCE .......................................................................35

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. City of Round Rock*, 854 F.3d 298 (5th Cir. 2017)............................32

*Allen v. Hays*, 65 F.4th 736 (5th Cir. 2023)................................................. 14, 15, 24

*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020) .......................................24

*Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007)......................................15

*Checki v. Webb*, 785 F.2d 534 (5th Cir. 1986) ..................................... 29, 31

*Croom v. Balkwill*, 645 F.3d 1240 (11th Cir. 2011) ...................................32

*Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004) ...........................29

*Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 WL 563799 (W.D. Tex. Jan. 31, 2020) ...................................................................................... 31, 32

*Florida v. Jimeno*, 500 U.S. 248 (1991) ..............................................25

*Georgia v. Randolph*, 547 U.S. 103 (2006) ...........................................25

*Gerhart v. Barnes*, 724 F. App'x 316 (5th Cir. 2018) .............................26

*Gerhart v. McLendon*, 714 F. App'x 327 (5th Cir. 2017) .........................26

*Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000) .........................31

*Gould v. Guerriero*, No. 24-12818, 2025 WL 1291659 (11th Cir. May 5, 2025) ..32

*Graham v. Connor*, 490 U.S. 386 (1989) ...............................................29

*Hankins v. Wheeler*, 109 F.4th 839 (5th Cir. 2024)..................................29

*Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017) ......................................31

*Hunt v. Tomplait*, 301 F. App'x 355 (5th Cir. 2008)................................27

*Illinois v. Rodriguez*, 497 U.S. 177 (1990) ................................. 14, 21, 22

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ...............................................24

*Lampton v. Diaz*, 639 F.3d 223(5th Cir. 2011)........................................24

*Lincoln v. Turner*, 874 F.3d 833 (5th Cir. 2017) ....................................18

*Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009).......................... 15, 20

*Maryland v. Garrison*, 480 U.S. 79 (1987) ..................................... 21, 27

*Ramirez v. Killian*, 113 F.4th 415 (5th Cir. 2024).....................................32

*Reed v. Campbell Cnty.*, 80 F.4th 734 (6th Cir. 2023) ...........................31

*Rogers v. Jarrett*, 63 F.4th 971 (5th Cir. 2023) .......................................28

*Simmons v. City of Paris*, 378 F.3d 476 (5th Cir. 2004)................................ passim

*Smith v. Lee*, 73 F.4th 376 (5th Cir. 2023)............................................16

*Spiller v. Harris Cnty.*, 113 F.4th 573 (5th Cir. 2024) ...........................31

*Trammell v. Fruge*, 868 F.3d 332 (5th Cir. 2017) ....................................31

*United States v. Jaras*, 86 F.3d 383 (5th Cir. 1996) .................................25

*Welsh v. Wisconsin*, 466 U.S. 740 (1984)........................................................ 25, 27

**Statutes**

28 U.S.C. § 1291 ...............................................................................................3
28 U.S.C. § 1331 ...............................................................................................3
28 U.S.C. § 1343(a) ..........................................................................................3
42 U.S.C. § 1983 ......................................................................... 10, 15, 24, 27

**Other Authorities**

Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Cal. L. Rev.
   201 (2023)...................................................................................................28

**Rules**

Fed. R. Civ. P. 12 .......................................................................... 10, 15, 24

# JURISDICTIONAL STATEMENT

The District Court has jurisdiction under 28 U.S.C. §§ 1331 (action arising under the Constitution and federal law) and 1343(a) (action to redress deprivation of civil rights). This Court has jurisdiction over appeals from final decisions of the District Court under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

1. Whether the District Court erred by relying on Defendants' assertions rather than the Complaint's factual allegations as a basis for granting the Motions to Dismiss.

2. Whether Plaintiff Tyler Harrington adequately pleaded that Defendants violated his clearly established rights to be free from unlawful entry, search, and seizure by entering his home without a warrant, consent, or exigent circumstances, and holding him at gunpoint as he stood in his own home, unarmed, in his underwear.

3. Whether Plaintiff Tyler Harrington adequately pleaded that Defendants violated his clearly established right to be free from excessive force by holding him at gunpoint without probable cause as he stood in his own home, unarmed, in his underwear.

## STATEMENT OF THE CASE

This case concerns three Defendant Harris County Constables who responded to a 911 call about a knock on a door, ignored every sign that they were at the wrong house—including the fact that one of them had just visited the correct house across the street for the same reported incident—and then illegally entered the home of Plaintiff Tyler Harrington without a warrant, consent, or exigent circumstances. When Defendants entered Mr. Harrington's home and observed him asleep in his bed, they questioned aloud whether they were at the right residence. They then exited the home. However, instead of confirming the address with a call to dispatch, they re-entered the home with guns drawn. Defendants woke Mr. Harrington with guns in his face and then continued to hold him at gunpoint for several minutes, while he stood dazed and unarmed in his underwear. Mr. Harrington brings this appeal because the District Court granted Defendants' Motions to Dismiss by improperly accepting the assertions made in Defendants' briefing rather than the contrary factual allegations in Mr. Harrington's well-pleaded Complaint.

### I. Relevant Facts as Alleged in the Complaint

1. Defendants responded to 911 calls concerning the home of Mrs. H, Mr. Harrington's neighbor.

On September 24, 2022, Defendant James Lancaster of the Harris County Constable's Office (Precinct 2) responded to a 911 call made by Mr. Harrington's

neighbor across the street, Mrs. H,[1] who thought she heard a knock at her back door while she was home alone. ROA.10. Defendant Lancaster drove to Mrs. H's home at 9819 Sagemark Drive, spoke with Mrs. H face-to-face, investigated the front and back of her property, and then left after about 12 minutes. ROA.10–12. At that point, Mrs. H told Lancaster that she might leave the house and that her daughter would be sending her boyfriend to check on the house. ROA.12. Mrs. H then left her house. Mrs. H's house is across the street from Mr. Harrington's house. ROA.11.

Later, Mrs. H's daughter and boyfriend arrived at Mrs. H's house in a truck. ROA.12. Mr. H (Mrs. H's husband) and Mr. S (a neighbor's son) each remotely observed Mrs. H's daughter and boyfriend on separate security cameras.[2] *Id*. Both Mr. H and Mr. S called 911 to report observing two people and a truck outside of Mr. and Mrs. H's home. ROA.12–13. Mr. H made clear to dispatch that he was calling regarding the earlier call from Mrs. H: he stated that officers had been to his home earlier and that his wife had left the house. ROA.13 ¶¶ 47, 52. Mr. H gave the correct address for the home: 9819 Sagemark Drive. ROA.13 ¶ 46. Mr. S, the son of the Mr. and Mrs. H's neighbors, told dispatch "I think it's 9818 Sagemark," an incorrect address, but specified that his parents lived next door and that their address

---

[1] To protect the privacy of Mr. Harrington's neighbors, the Complaint used only the first initials of their last names. "Mrs. H" and "Mr. H" live across the street from Mr. Harrington. "Mr. S" is the son of the next-door neighbors of Mr. and Mrs. H. Mrs. and Mr. H, the neighbors, should not be confused with Mr. Harrington, the Plaintiff, although both of their last names start with "H."

[2] The District Court's ruling incorrectly identifies Mr. S, the neighbor's son, as the son of Mr. and Mrs. H. ROA.119.

was definitely "9823." ROA.12 ¶ 41. 9823 Sagemark Drive is next to 9819 Sagemark Drive—not 9818. *See* ROA.11 (including the below map).



9818 Sagemark Drive is located across the street from Mr. and Mrs. H's home, and belongs to Mr. Harrington. ROA.11–13. Even though Mr. H had provided the correct address of his home, and Mr. S had stated "I *think* it's 9818 Sagemark Drive" while correctly identifying the address next door to the home he was calling about as 9823 Sagemark Drive, dispatch relayed the incorrect given by Mr. S (9818 Sagemark Drive) to the officers. ROA.12 (emphasis added); *see also* ROA.13.

Accordingly, when Defendant Lancaster returned to Sagemark Drive in response to the calls from Mr. H and Mr. S, he found Defendants Lindsay and Cano standing in front of Mr. Harrington's home, across the street from the house he had previously searched less than thirty minutes earlier (the H residence). ROA.14.

Defendant Lancaster told the other Defendants he had already met the homeowner across the street in person and searched her home and had "never been to [Mr. Harrington's] house." *Id.* ¶¶ 57–58.

> 2. <u>Defendants never secured consent to search any home, let alone Mr. Harrington's, nor did exigent circumstances exist.</u>

While speaking to dispatch, Mr. H specifically instructed dispatch to tell Defendants not to clear his home until his wife, who had left and gone for a drive, had returned. ROA.12 ¶ 34; ROA.13 52–55. Neither Mr. nor Mrs. H ever gave consent for Defendants to search their home in their absence. ROA.13 ¶¶ 52–55 ("Mr. H asked that the police car wait in front of his house until his wife returned."); ROA.14 ¶¶ 61–64; ROA.15 ¶ 72. Defendants understood they lacked consent to enter until Mrs. H was back: Defendant Lancaster told the other Defendants that they were, "waiting on the homeowner" to enter, not once, but twice. ROA.14 ¶¶ 62, 64.

Moreover, not only did Defendants fail to secure consent to search *any* home that night, they also received repeated indications Mr. Harrington's house was not the one referenced in the 911 calls: Defendant Lancaster informed the other Defendants that he had been to and investigated the house across the street for the same reported incident, knew that the homeowner across the street had left her home, and knew that he and the other Defendants were waiting for a homeowner to return before entering the home. ROA.11–12, ¶¶ 30–36; ROA.13 ¶ 50; ROA.14 ¶¶ 57, 62, 64. He also knew that dispatch had received multiple calls that night about the same

7

incident. ROA.14 ¶ 59; ROA.15 ¶ 69. These facts would have led any reasonable officer to conclude that the homeowner they were waiting for was Mrs. H, and that they were outside the wrong house.

Defendants also knew there were no exigent circumstances requiring immediate action: none of the residents of the H residence were home, Defendants had secured the front and rear exits, and everything was "under control." ROA.14 ¶ 64. Nevertheless, after realizing that the doors to Mr. Harrington's house were unlocked, Defendants entered.

### 3. Defendants unlawfully entered and searched Mr. Harrington's home without confirming the address, without consent, and without exigent circumstances.

Prior to entering Mr. Harrington's home, Defendants did not return to Mrs. H's property, confirm the address with dispatch, confirm they had consent to enter the home, or seek any other clarification. ROA.8 ¶ 5, ROA.15 ¶ 68. Had Defendants waited for Mrs. H to return home, as directed, they would have learned they were at the wrong address. Instead, once Defendants realized that the doors were unlocked, they disregarded the caller's directive to wait for his wife's return and, even though everything was "under control," ROA.14 ¶ 64, they entered Mr. Harrington's home without knocking, without announcing their presence, and with their guns drawn, ROA.2 ¶¶ 6–10.

Shortly after entering Mr. Harrington's home, Defendants Lindsay and Cano opened a closed door and, in the beams of their weapon-mounted lights, saw Mr. Harrington asleep in his bed. ROA.16 ¶¶ 79–80. Defendant Lindsay asked Defendant Cano, "Did they give us the right address?" Defendant Cano whispered back, "I don't know." *Id.* The two Defendants retreated to the front door. ROA.16 ¶¶ 81–82. Yet then, instead of radioing dispatch or taking any other steps to confirm the address, they knocked for the first time, announced their presence, and reentered the home with their guns still drawn, without waiting for Mr. Harrington or anyone else in the home to come to the door. ROA.16 ¶¶ 81–83; ROA.17 ¶¶ 89, 92.

4. <u>Defendants unlawfully held Mr. Harrington at gunpoint in his own home.</u>

In response to Defendants Lindsay and Cano's knocking and shouting as they re-entered, Mr. Harrington awoke and emerged from his bedroom with his wife, dazed, terrified, barely clothed in underwear, and with his hands raised. ROA.17 ¶¶ 93–94, 97. Hearing the noise inside, Defendant Lancaster entered through the back door with his gun drawn, screaming. *Id.* ¶ 90. All three Defendants aimed their guns at Mr. Harrington, yelling at him to keep his hands up, and shouting questions at him about whether he lived in the house, while he repeatedly stated that he did live there. ROA.17–18 ¶¶ 92–101. When Defendants finally checked the address with dispatch, dispatch confirmed they had entered the wrong home. ROA.18 ¶¶ 108–109. Defendants then chastised Mr. Harrington and his wife about locking their doors,

telling them that "when we see a door unlocked like that, we're gonna come in and make sure everybody's safe." ROA.19 ¶ 110.

Mr. Harrington is a lawful gun owner. He remains haunted by how differently events could have unfolded if he had grabbed his gun in self-defense after hearing unannounced strangers barging into his home in the middle of the night, while he and his wife were sleeping. *Id*. ¶¶ 119–124, 127. Defendants' unlawful entry, search, seizure, and use of excessive force have caused lasting psychological damage to Mr. Harrington. ROA.20–21 ¶¶ 122–129. He now feels anxious and nervous when lawfully carrying his firearm. *Id.* ¶ 127. He struggles to sleep, and feels scared and reluctant to call the police for help. ROA.21 ¶¶ 125–126, 129.

## II. Procedural History

On January 31, 2024, Mr. Harrington filed a Complaint under 42 U.S.C. § 1983 against Precinct 2 Officers James Lancaster, Jared Lindsay, and Nathaniel Cano for violating his Fourth Amendment rights. Defendants Lancaster and Lindsay moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on March 7, 2024. ROA.55. Mr. Harrington responded in opposition to Defendants' motion. ROA.69. Defendants Lancaster and Lindsay filed a Reply in support of their Motion to Dismiss. ROA.95. Mr. Harrington filed a Motion for Leave to File Sur-Reply, on which the District Court never ruled. ROA.102;

ROA.106; ROA.1–6 (no ruling on Motion for Leave to File Sur-Reply). The District Court granted the Motion to Dismiss.[3]

Defendant Cano was served later than Defendants Lancaster and Lindsay, and accordingly moved to dismiss in a nearly identical motion on May 8, 2024. ROA.124. Mr. Harrington responded in opposition to Defendant Cano's motion. ROA.137. Defendant Cano filed a Reply in support of his Motion to Dismiss. ROA.165. Mr. Harrington filed a Motion for Leave to File Sur-Reply, which the District Court denied. ROA.173; ROA.177; ROA.4–5.

## III. Relevant Rulings

The District Court granted both of the Motions to Dismiss, on orders entered on April 23, 2024 and July 31, 2024. In both opinions, the District Court based its analysis on factual assertions contrary to those in the Complaint. Instead, drawing from the Defendants' Motions to Dismiss, the court incorrectly stated that Mr. and Mrs. H gave permission for the Defendants to search the house once they were informed that the doors were unlocked, and that dispatch confirmed that Defendants were at the correct address. ROA.119, 121, 192. By contrast, Mr. Harrington's Complaint alleged that Mr. and Mrs. H did not give consent for the Defendants to enter the home until after Mrs. H had returned—a condition Defendants knew was

---

[3] Mr. Harrington initially noticed an appeal of the court's dismissal of his claims against Defendants Lancaster and Lindsay, but the appeal was denied without prejudice for lack of jurisdiction because the claims against Defendant Cano were still active. ROA.194.

not met when they entered the home. ROA.15 ¶ 72. Mr. Harrington also explicitly pleaded that Defendants *failed* to confirm the address of the home they entered before entering, after entering and questioning aloud whether they were at the right home, or before re-entering. Nevertheless, the District Court dismissed Mr. Harrington's claims of unlawful entry, search, and seizure because they were "conducted based on [] perceived consent." ROA.122.

Similarly, the court posited that Defendants entered Mr. Harrington's home in response to "reports of suspicious activity in the area involving a male and female suspect possibly attempting to break into a house." ROA.122. But that directly contradicts Mr. Harrington's allegations that the 911 calls were merely regarding a knock at a door and nothing more.

The District Court dismissed Mr. Harrington's excessive force claims because "[t]here was no factual proffer that any force used exceeded what was required in order to take control of the situation" since Defendants "were confronted with a potentially dangerous situation," and because "no physical harm was reported by the plaintiff." ROA. 122. But the District Court did not analyze the caselaw cited by Mr. Harrington that clearly established that holding an unarmed and compliant suspect at gunpoint constitutes unreasonable force and that psychological harms can satisfy the injury requirement of an excessive force claim. *See* ROA.122–23.

## SUMMARY OF THE ARGUMENT

The District Court erred by departing from Mr. Harrington's well-pleaded allegations and relying instead on Defendants' contradictory assertions in its ruling that Defendants had not violated Mr. Harrington's rights and were entitled to qualified immunity. Applying the correct legal standard and accepting the facts as pleaded by Mr. Harrington in the Complaint makes clear that the District Court erred in granting Defendants' Motions to Dismiss.

Mr. Harrington plausibly pleaded that Defendants entered and searched his home without a warrant, consent, or exigent circumstances, and that they seized him at gunpoint while he stood dazed in his underwear, in violation of clearly established law. Yet the District Court stated that dispatch had informed the homeowners that the doors to the home were unlocked, and that the homeowners then gave consent for Defendants to search the home. But that flatly contradicts Mr. Harrington's allegations that the neighboring homeowners did not give consent to search the home before Mrs. H returned, and that she had not yet returned when Defendants entered. Similarly, the District Court stated that dispatch confirmed that the Defendants were at the correct address. Yet Mr. Harrington's pleadings expressly state that Defendants *failed* to confirm the address.

The District Court also failed to address Mr. Harrington's argument that, even if Defendants had somehow reasonably perceived consent, they were required to

"discontinue the search" once they became aware of the "risk that they might be in" the wrong home, since that eliminated their ability to rely on any even arguably perceived consent. *Simmons v. City of Paris*, 378 F.3d 476, 479 (5th Cir. 2004); *see also Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990).

Lastly, the District Court relied on Defendants' characterization of the 911 calls to suggest exigent circumstances existed. But the facts as pleaded make clear no exigent circumstances existed. Because "[c]onstru[ing] the facts in favor of the defendants . . . is error," the District Court's dismissal of the unlawful entry, search, and seizure claims must be reversed. *Allen v. Hays*, 65 F.4th 736, 746 (5th Cir. 2023).

Mr. Harrington also plausibly pleaded that Defendants violated his clearly established right to be free from excessive force by holding him at gunpoint for several minutes while he stood unarmed, dazed, and confused in his underwear, inflicting lasting psychological injuries on Mr. Harrington. The District Court dismissed the claim, finding that the force used did not exceed what was necessary and that Mr. Harrington did not suffer physical injuries. But it is clearly established that brandishing a deadly weapon against a compliant and non-threatening individual is objectively unreasonable. And this Court has recognized that purely psychological injuries can satisfy the injury requirement of an excessive force claim. As such, Defendants violated Mr. Harrington's clearly established right to be free from excessive force.

## ARGUMENT

This court reviews *de novo* a grant of a Rule 12(b)(6) motion to dismiss. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). When ruling on a motion to dismiss for failure to state a claim, a court must take all well-pleaded factual allegations as true and construe those facts in the light most favorable to the plaintiff. *Id.* A complaint need only allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). Importantly, this plausibility standard is not akin to a probability standard, and complaints may proceed even if the judge believes the facts themselves to be improbable. *Id*. at 556. Thus, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand*, 565 F.3d at 232.

When a "district court []construe[s] the facts in favor of the defendants, [it has committed] error." *Allen v. Hays*, 65 F.4th 736, 746 (5th Cir. 2023) (reversing a district court in a section 1983 police misconduct case where the district court construed the facts in favor of the defendants and improperly granted qualified immunity). This is precisely the error at issue in this appeal. If the District Court had applied the correct standard, it would have found that Mr. Harrington had plausibly pleaded his claims and that Defendants were not entitled to qualified immunity.

**I.     Mr. Harrington Plausibly Pleaded That Defendants Violated His Clearly Established Right to Be Free from Unlawful Entry, Search, and Seizure.**

1.  <u>Mr. Harrington plausibly pleaded that Defendants entered his home without a warrant, consent, or exigent circumstances.</u>

Mr. Harrington's Complaint alleges that Defendants violated the Fourth Amendment by entering his home without a warrant, consent, or exigent circumstances. "Under the Fourth Amendment, a warrantless intrusion into a person's home is presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the intrusion." *Smith v. Lee*, 73 F.4th 376, 381 (5th Cir. 2023) (quotation omitted).

Mr. Harrington pleaded Defendants lacked both a warrant and consent to enter and search any home, let alone his. ROA.16. Specifically, Mr. Harrington pleaded that the Defendants did not have consent to search any house because they had received consent to "clear the house" *only once Mrs. H returned*—a condition that was never met. ROA.13 ¶¶ 52–55. Defendants confirmed they understood as much by repeatedly stating they were waiting for the homeowner to return before entering. ROA.14 ¶¶ 62, 64. Moreover, Defendants should have known that they did not have consent to search Mr. Harrington's home: Defendant Lancaster had been to the house across the street less than an hour earlier. He had spoken to Mrs. H, knew she was going for a drive, and knew the caller directed Defendants not to enter until after

16

his wife returned. ROA.13 ¶¶ 52–55; *see also* ROA.12; ROA.14 ¶¶ 57, 62, 64, 70–71. In other words, Lancaster—and the other Defendants who had received this information from him—should have known the homeowner they were waiting for was Mrs. H, and that they were in front of the wrong house. Moreover, Mr. Harrington pleaded that Defendants Lindsay and Cano entered his home a second time after questioning aloud whether they were at the correct address. Defendants' own acknowledgment that they might be at the wrong house, followed by their re-entry, eliminated any argument that they were reasonably relying on perceived consent from Mr. H. ROA.16.

Mr. Harrington also pleaded that there were no exigent circumstances justifying entry. ROA.15 ¶ 72. "Defendants had only received a report of a knock at the door . . . The caller made clear that the homeowner had left and that no other residents were home, so there was no basis for concern about the residents' safety. Defendants had secured both the front and back door of the house, blocking channels of possible escape." ROA.19 ¶ 116. There was no exigency.

Taking Mr. Harrington's allegations as true, the entry and search of his residence was unreasonable and unlawful since Defendants lacked a warrant, consent, or exigent circumstances.

2. Mr. Harrington plausibly pleaded that Defendants seized him without probable cause by holding him at gunpoint and telling him not to move.

A seizure occurs when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Lincoln v. Turner*, 874 F.3d 833, 841 (5th Cir. 2017) (internal citations omitted). Mr. Harrington pleaded that officers held him at gunpoint, told him to put his hands up, and told him to "stay right there." ROA.9 ¶¶ 14–15; ROA.23 ¶¶ 142–147.

Mr. Harrington also pleaded that officers had neither consent nor probable cause to be in his home in the first instance. *See supra* I.1 (Defendants had no consent to search any home); *see id.* (Defendants should have known they were at the incorrect home); *see* ROA.7 ¶ 2; ROA.16 ¶ 76; ROA.19 ¶ 116; ROA.23 ¶ 149 (Defendants had no other probable cause to search Mr. Harrington's home). Mr. Harrington therefore plausibly alleged that Defendants unlawfully seized him under the Fourth Amendment.

3. The District Court erred by departing from the Complaint's allegations that (i) Defendants lacked consent—or even a reasonable perception of consent—to enter Mr. Harrington's home and that (ii) there were no exigent circumstances justifying the entry and seizure.

Despite Mr. Harrington's well-pleaded allegations, the District Court dismissed Mr. Harrington's unlawful entry, search, and seizure claims for two reasons: (1) the "seizure [was] conducted based on [the] perceived consent, which appeared valid given the information provided," ROA.122, and (2) because it was

in response to "reports of suspicious activity in the area involving a male and female suspect possibly attempting to break into a house." *Id.* But Mr. Harrington's pleadings allege that Defendants neither had consent—actual or reasonably perceived—nor faced exigent circumstances justifying entry into Mr. Harrington's home. Additionally, the District Court failed to acknowledge that even if Defendants' original entry was somehow excusable as a reasonable mistake, their second entry was not excusable.

> *i. The District Court incorrectly relied on Defendants' assertions, rather than the Complaint's allegations, in determining that Defendants received consent to search Mr. Harrington's home.*

In determining whether Defendants had consent to enter Mr. Harrington's home, the District Court relied on Defendants' assertions over the Complaint's allegations in two ways.

First, the District Court stated that dispatch informed the homeowners, Mr. and Mrs. H, that their doors were unlocked, and that Mr. and Mrs. H then gave permission for Defendants to search the home. ROA.119; ROA.192. But Mr. Harrington did not plead anything of the sort. Instead, Mr. Harrington pleaded that the homeowners had not given consent for Defendants to enter the house before Mrs. H returned, a condition that was never met. ROA.13 ¶¶ 52–55; ROA.14 ¶¶ 61–64 (homeowner told the police to wait until Mrs. H returned to "clear" the home, and Defendants were waiting for the homeowner to return before clearing the house).

Nevertheless, Defendant Lindsay informed dispatch that Defendants would "search[] the home now, before she gets here." ROA.15 ¶ 72.

Instead of relying on Mr. Harrington's well-pleaded allegations, the District Court relied on assertions in Defendants' Motions to Dismiss—assertions that are contradicted by the Complaint. *See* ROA.56 (incorrectly stating that "[t]he homeowner permitted the deputies to search his house because the doors should have been locked and no one was supposed to be there."). It appears that the District Court simply accepted Defendants' unsupported assertions and relied on them in its ruling as though it were weighing competing evidence at trial, rather than evaluating the adequacy of a pleading. *See* ROA.121 ("In the case at bar, *the evidence shows* that the officers believed that they were at the correct address and that they had consent from the homeowner to search the premises.") (emphasis added); *but see Lormand*, 565 F.3d at 232 ("[C]ourts must, as with any motion to dismiss . . . accept all factual allegations in the complaint as true . . . [and] draw all reasonable inferences in the plaintiff's favor."). If the District Court had relied on Mr. Harrington's well-pleaded allegations, it would have found that Defendants entered without consent before Mrs. H returned

Second, the court also incorrectly stated that "the dispatcher confirmed that [Defendants] were at the correct address" ROA.121. In fact, Mr. Harrington

explicitly pleaded that Defendants failed to confirm the address before entering the home. ROA.8–9 ¶¶ 11, 15; ROA.15 ¶ 67; ROA.18–19.

Moreover, the Complaint alleged that Defendants did not even attempt to confirm the address until after they had Mr. Harrington and his wife held at gunpoint. ROA.15 ¶ 67; ROA.17–18 ¶¶ 88, 96, 102. Even if Defendants' initial entry was somehow justified on a mistaken perception that they had consent, their subsequent re-entry and gunpoint seizure could not be. Mr. Harrington pleaded that Defendants *exited and then re-entered* his home, despite verbally questioning aloud whether they were at the correct home. *See* ROA.16–17. Defendants did so in violation of the "clearly established constitutional rule that, when law enforcement officers are executing a search [] and discover that they have entered the wrong residence, they should immediately terminate their search." *Simmons v. City of Paris*, 378 F.3d 476, 479–80 (5th Cir. 2004). Defendants were required to "discontinue the search" when they became aware "of the *risk* that they *might be* in" the wrong house. *Id*. (emphasis added) (quoting *Maryland v. Garrison*, 480 U.S. 79, 87 (1987)). The District Court did not address this argument.

The District Court also reasoned that "seizure stemming from factual errors can be considered reasonable." ROA.122. (citing *Illinois v. Rodriguez*, 497 U.S. 177, 183-186 (1990)). However, *Rodriguez* makes clear that officers cannot rely on perceived consent to justify a seizure when there is reason to believe that the person

who granted consent did not have authority to do so. *See* 497 U.S. at 188 ("[W]hat we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry."). Here, Defendants had reason to believe they were at the wrong house as soon as they arrived. At a minimum, once Defendants openly questioned whether they were at the wrong address, they could no longer rely on any perceived consent to enter the home to justify the seizure. *Simmons*, 378 F.3d at 479–80.

The facts as pleaded establish that Defendants did not have—nor reasonably believed they had—consent to enter any home, let alone Mr. Harrington's home. Accordingly, the entry, search, and seizure could not have been justified as such.

> ii. *The District Court incorrectly relied on Defendants' assertions, rather than the Complaint's allegations, in determining that exigent circumstances justified entering and searching Mr. Harrington's home.*

Defendants did not attempt to justify their entry and search of Mr. Harrington's home on the basis of exigent circumstances. Nevertheless, the District Court found the initial entry justified because "[t]he fact that deputy Lancaster had been previously dispatched to an address across the street from the plaintiff's

residence, does not negate the possibility that a new threat at a different address on the same street was in progress." ROA.121. The court justified the subsequent seizure because "defendants were responding to reports of suspicious activity in the area involving a male and female suspect possibly attempting to break into a house." ROA.122. But the Complaint does not allege anything about a potential break-in. To the contrary, the Complaint expressly alleges that Defendants had no basis to believe exigent circumstances existed. *See* ROA.19 ¶ 116.

Further, the Complaint pleads that after Mrs. H told Defendant Lancaster that she might get in her car and drive around and that her daughter would send her boyfriend over to check on the house, the boyfriend and daughter did in fact arrive at the house. The Complaint further pleads that they arrived in a black truck, which Mr. H and Mr. S each observed on camera, and that Mr. H told dispatch that "there were now people at his house." ROA.13 ¶ 47. But the District Court transformed this allegation into a statement that "[d]ispatch[] informed [Defendants] that the homeowner's husband, Mr. H, stated that two people, a male and female were *banging on their front and back doors* and that he could see them on their camera." ROA.118 (emphasis added). That assertion appears nowhere in the Complaint, but was included in Defendants' Motions to Dismiss. *Compare* ROA.12–13 *with* ROA.122 *and* ROA.56. The Complaint makes clear, "Defendants had only received a report of a knock at the door of an empty house . . . The caller made clear that the

homeowner had left and that no other residents were home, so there was no basis for concern about the residents' safety. Defendants had secured both the front and back door of the house, blocking channels of possible escape." ROA.19 ¶ 116.

When a "district court []construe[s] the facts in favor of the defendants, [it has committed] error." *Allen*, 65 F.4th at 746. Here, the District Court erred by relying on Defendants' assertions that Defendants had consent to enter the home and suggesting that exigent circumstances existed.

4.  <u>Defendants are not entitled to qualified immunity on the unlawful entry, search, or seizure claims.</u>

When a plaintiff pleads a section 1983 claim that implicates qualified immunity, there is no heightened pleading standard: they must simply "plead qualified immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020). Therefore, "[i]n determining immunity, [the court] must accept the allegations of [plaintiff]'s complaint as true." *Lampton v. Diaz*, 639 F.3d 223, 225 (5th Cir. 2011) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 122 (1997)). The District Court deviated from the proper standard for adjudicating a Rule 12(b)(6) motion to dismiss when it granted Defendants' Motions to Dismiss. As discussed *infra* and *supra*, Mr. Harrington did plead "specific facts" that could have defeated a qualified immunity defense. *Arnold*, 979 F.3d at 267.

The District Court's qualified immunity analysis consisted of a single statement that the "the Court [found] that the defendants [were] entitled to qualified immunity in this matter, under the circumstances. [*King v.*] *Handorf*, 821 F.3d [650,] 653 [(5th Cir. 2016)]. The plaintiff has failed to establish that the defense is inapplicable." ROA.123. The "circumstances" to which the court refers—borrowed from Defendants' assertions, as described above—directly contradict Mr. Harrington's pleadings.

In fact, it is clearly established that it is objectively unreasonable to conduct a warrantless entry into a home without consent or exigent circumstances. *See Georgia v. Randolph*, 547 U.S. 103, 114 (2006); *see also Welsh v. Wisconsin*, 466 U.S. 740, 754 (1984) ("application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense, such as the kind at issue in this case, has been committed"). It is also clearly established that when executing a consent search, officers cannot exceed the scope, or ignore the specified conditions, of the consent. *See United States v. Jaras*, 86 F.3d 383, 390 (5th Cir. 1996) ("'A [person] may of course delimit as he chooses the scope of the search to which he consents.'") (quoting *Florida v. Jimeno*, 500 U.S. 248, 252 (1991)). Here, on the facts pleaded by Mr. Harrington, Defendants were not facing exigent circumstances and did not have consent to enter any home, much less Mr. Harrington's. And even if they had entered based on

25

reasonably perceived consent from Mr. H, they exceeded the scope of his consent by failing to wait for Mrs. H to return before entering.

It is also clearly established that it is objectively unreasonable for officers to enter a home that they knew or should have known was the wrong house. *See Gerhart v. Barnes*, 724 F. App'x 316, 325 (5th Cir. 2018); *see also Gerhart v. McLendon*, 714 F. App'x 327, 334 (5th Cir. 2017) (denying qualified immunity to officer who entered house on warrant for neighboring house because clearly established law gave him fair notice that he had to make reasonable, non-feeble efforts to correctly identify the target of a search). Here, Defendants ignored every indication that they were at the incorrect address. Defendant Lancaster knew—and communicated to the other Defendants—that he had responded to the house across the street for the same report, had spoken to Mrs. H and knew she was planning to leave the house to drive around, and knew that they were waiting on a homeowner who had left to return. In other words, Defendants should have known that the homeowner whose return they were awaiting was Mrs. H, and that they were at the wrong address.

Even if Defendants had initially believed they were at the correct address, it was objectively unreasonable to re-enter and continue searching after they voiced skepticism that they were in the right place. *Simmons*, 378 F.3d at 479 ("[O]fficers . . . were required to discontinue the search of respondent's apartment as soon as

they . . . were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant.'") (quoting *Garrison*, 480 U.S. at 87); *Hunt v. Tomplait*, 301 F. App'x 355, 357 (5th Cir. 2008) (holding it was objectively unreasonable to search the wrong home where the officer "knew that members of the Hunt family resided at that location because he had been there on a previous occasion"). Once Defendants themselves questioned whether they were at the right address, they indisputably "had notice of the risk" that they were at the wrong house and were required to cease the search under clearly established law. *Simmons*, 378 F.3d at 479.

Similarly, it is clearly established that it is unconstitutional to seize someone in their own home without reasonable suspicion or probable cause. *See Simmons*, 378 F.3d at 478–480 (holding that law enforcement officers' alleged conduct of detaining family members and not immediately exiting the home after discovering they had entered the wrong home, if proven, was "objectively unreasonable"); *see also Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984). Once they found Mr. Harrington asleep in his bed with his wife—and then, upon their reentry, in his underwear, unarmed, dazed, and compliant—any probable cause Defendants might have had evaporated. ROA.16–19; ROA.23. But instead of stopping their search and seizure at that point, they questioned him at gunpoint, even after he and his wife repeatedly

told Defendants they lived there. *Id*. Defendants had neither reasonable suspicion nor probable cause for prolonging their seizure of Mr. Harrington.

Defendants entered Mr. Harrington's home without a warrant, consent, or exigent circumstances. They then exited, re-entered, and held him at gunpoint. They did so even after questioning aloud whether they were in the right home, and then exiting the home. Particularly given the calm scene inside the home of two adults sleeping in bed, Defendants had ample time to call dispatch and address any uncertainty over the location. Accordingly, the facts as pleaded by Mr. Harrington establish that Defendants are not entitled to qualified immunity.

    5.   Qualified immunity does not apply to claims brought pursuant to 42 U.S.C. § 1983.

Qualified immunity does not apply to Mr. Harrington's section 1983 claims: recent scholarship has revealed that section 1983 as originally enacted contained a "Notwithstanding Clause" that explicitly displaced common-law defenses, including qualified immunity. *Rogers v. Jarrett*, 63 F.4th 971, 979 (5th Cir. 2023) (Willett, J., concurring) (citing Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CAL. L. REV. 201 (2023)). However, the "Reviser of Federal Statutes made an unauthorized alteration to [that] language" which "has never been corrected," rendering the foundation of the doctrine flawed. *Id*. at 980. However, this Court has held that only the Supreme Court can grapple with this argument. *See id*. at 979; *see*

*also Hankins v. Wheeler*, 109 F.4th 839, 845 (5th Cir. 2024). Mr. Harrington raises this argument to preserve it.

## II. Mr. Harrington Plausibly Pleaded That Defendants Violated His Clearly Established Right to Be Free from Unlawful Excessive Force.

1. <u>Mr. Harrington plausibly pleaded that Defendants violated his clearly established right to be free from excessive force.</u>

Force is excessive where there is: (1) an injury to the plaintiff (2) that was directly caused by defendants' actions, and (3) the use of force was unreasonable. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). The injury need not be physical. *Id.* at 398. In the Fifth Circuit, a "police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face . . . has certainly laid the building blocks for a section 1983 claim against him." *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986). The factors that the Court must consider when determining the reasonableness of force are, "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Here, Mr. Harrington properly pleaded that Defendants used unreasonable force against him. *See* ROA.23. All three of the *Graham* factors weighed against any use of force, let alone brandishing a loaded gun. First, there was no suspected crime: Defendants were responding to a knock at the door, and by the time they seized Mr.

Harrington at gunpoint, they had sufficient reason to know they were not at the right house and had no probable cause to seize him. Second, Mr. Harrington did not pose an immediate threat to the safety of the Defendants: they had seen him asleep in bed just moments before and he was visibly unarmed. ROA.16 ¶¶ 79–80; ROA.17 ¶ 95. Third, Mr. Harrington was not fleeing and was cooperating. ROA.17–18.

Mr. Harrington also adequately pleaded psychological injuries that were the result of Defendant's actions. *See* ROA.20–21; ROA.23–24 (describing severe and ongoing emotional injuries caused by Defendants' actions including difficulty sleeping and severe ongoing anxiety and fear). Accordingly, he plausibly pleaded a claim for excessive force.

### 2.   Defendants' alleged excessive force violated clearly established law.

The District Court dismissed Mr. Harrington's excessive force claim for two reasons: first, "[t]here was no factual proffer that any force used exceeded what was required in order to take control of the situation" since Defendants "were confronted with a potentially dangerous situation," and second, "no physical harm was reported by the plaintiff." ROA.122. The Court then found "that the defendants [were] entitled to qualified immunity in this matter, under the circumstances." ROA.123.

But Defendants' alleged excessive force violated clearly established law providing that it is unreasonable to use force against someone when there is no probable cause for a seizure. *See Goodson v. City of Corpus Christi*, 202 F.3d 730,

740 (5th Cir. 2000); *see also Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017). Here, Defendants entered Mr. Harrington's home without a warrant, consent, or exigent circumstances and, after questioning whether they were at the right house, held him at gunpoint without probable cause as he stood, unarmed, in his underwear.

Moreover, "[c]learly established law demonstrates that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017); *see also Spiller v. Harris Cnty.*, 113 F.4th 573, 577–78 (5th Cir. 2024) (denying qualified immunity to Jared Lindsay, one of the Defendants in this case, for using force against someone who was not actively resisting); *Reed v. Campbell Cnty.*, 80 F.4th 734, 748 (6th Cir. 2023) (holding that because a jury could conclude that the Defendant officers "had no right to be inside" the plaintiff's home "to detain him in the first place," it was excessive force to point a gun at plaintiff's head and grab him by the arm).

Indeed, courts in this circuit have recognized as clearly established the rule that it is "objectively unreasonable for a police officer to forcefully brandish a deadly weapon at citizens whom he could not reasonably have perceived to be dangerous." *Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 WL 563799, at *7–9 (W.D. Tex. Jan. 31, 2020) (relying on an "out-of-circuit consensus" of seven circuit courts to find the principle clearly established) (collecting cases); *see also Checki*, 785 F.2d at 538;

*Ramirez v. Killian*, 113 F.4th 415, 422 (5th Cir. 2024) (noting that a "consensus of persuasive authority" can clearly establish law). Since *Flores*, the Eleventh Circuit has joined the chorus by clarifying that as of 2011, it was "clearly established that drawing a gun on a compliant and non-threatening bystander constitutes excessive force." *Gould v. Guerriero*, No. 24-12818, 2025 WL 1291659, at *3 (11th Cir. May 5, 2025) (emphasis removed) (citing *Croom v. Balkwill*, 645 F.3d 1240, 1252 n.17 (11th Cir. 2011)). Here, Defendants held Mr. Harrington at gunpoint even though they had seen him sleeping in bed, he was visibly unarmed and compliant, and he was dressed only in his underwear. ROA.16–18. Even Defendant Lindsay acknowledged the unreasonableness of their actions, saying "oh yeah they're gonna complain . . . they're gonna complain . . . we scared them." ROA.19 ¶ 112. Accordingly, Defendants violated Mr. Harrington's clearly established right to be free from excessive force.

The District Court's dismissal of the claim on the grounds that "no physical harm was reported by the plaintiff" was also divorced from clearly established law. "[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (citation omitted). "*Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold." *Id*. (emphasis in

original) (citation omitted). As such, the District Court's opinion conflicts with controlling law.

## CONCLUSION

For the reasons stated above, Plaintiff-Appellant asks this Court to reverse the District Court's decision granting Defendants' Motions to Dismiss, reinstate all claims against Defendants, and remand the case for further proceedings.

<div style="margin-left:40%">

Submitted by:

/s/Alessandro Clark-Ansani
ALESSANDRO CLARK-ANSANI
alessandro@civilrightscorps.org
JEFFREY D. STEIN
jeff@civilrightscorps.org
CIVIL RIGHTS CORPS
1601 Connecticut Avenue, N.W. Suite 800
Washington, DC 20009
Telephone: (202) 844-4975
Counsel for Plaintiff-Appellant Tyler
Harrington

</div>

## CERTIFICATE OF SERVICE

I certify that on October 15, 2025, counsel for Plaintiff corresponded in writing with counsel for Defendants who waived service of paper copies and agreed to be served only with an electronic copy, according to 5TH CIR. R. 31.1. I certify that on October 21, 2025, the foregoing document was served via the Court's electronic filing system and via email on the following parties/counsel:

Gregory Burnett
Rachel Fraser
Kelsie Copeland
OFFICE OF THE HARRIS COUNTY ATTORNEY

/s/Alessandro Clark-Ansani

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5TH CIR. R. 32.1: this document contains 7,254 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5TH CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Times New Roman, font-size 14.

S/Alessandro Clark-Ansani